JENNIE L. PRESTON *vs.* UNITED ELECTRIC RAILWAYS COMPANY

JULY 27, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This action of trespass on the case for negligence was tried in the superior court by a justice thereof sitting with a jury, and resulted in a verdict for the plaintiff for $4600. The defendant's motion for a new trial on the usual grounds, and on the further ground that the damages awarded were excessive, was heard and denied by the trial justice. The case is before us on an exception to this ruling and on certain other exceptions taken by the defendant during the trial. The first six exceptions in defendant's bill of exceptions are expressly waived.

According to the evidence, the plaintiff was injured by falling from the platform of a trackless trolley car of the defendant company on Douglas avenue in the city of Providence shortly after 1 p.m. on July 6, 1935, which was a very sultry day. For convenience we shall hereinafter refer to the trackless trolly car as the bus. The plaintiff, who was seventy-six years old at the time of the accident, testified that she left the Charles V. Chapin Hospital, where she was employed as a clerk or secretary with some stenographic duties, and, taking a short-cut and hurrying somewhat, reached Douglas avenue where she intended to board the defendant's bus. She remembers nothing more of what happened to her until she found herself in bed in the Rhode Island hospital.

A witness for the plaintff named Antonucci was a passenger on the bus at the time of the accident, and was seated to the left of and some five feet behind the operator of that vehicle. This witness testified that he saw the plaintiff wait-

ing at a white pole; that after the bus stopped he again saw her on its platform near the open doors either paying her fare or showing her pass; that as she was about to start for her seat the bus with the doors still open "makes a sudden jerk to go forward", and then gave another jerk as it came to a stop; that when this happened the plaintiff lost her balance and, making an unsuccessful attempt to take hold of the upright stanchion which separates the two sides of the door at the edge of the platform, fell backward through the open door onto the street, where she lay with her feet about a foot away from the bus. In cross-examination this witness testified that "the bus started quick and jerked . . . started and stopped again" while the plaintiff was directly in the open doorway of the bus.

This witness further testified that some three or four minutes after the accident, while the operator of the bus was helping him to administer first-aid to the plaintiff, who had been placed on the bus, the following conversation took place between him and the operator: "If you had closed the doors the old lady wouldn't have fell off, and he says, 'she must have fainted', and I said 'Fainted, hell. If you had closed the doors the old lady wouldn't fall.' "

Another witness for the plaintiff, one Buontempo, also a passenger and who sat on the left side of the bus facing forward, testified that, after the plaintiff presented her fare to the operator, the bus "gave a sudden jerk, stopped and jerked again", throwing the plaintiff backward through the open door to the street. He further testified that the bus moved about six inches at each jerk.

The principal witness for the defendant was the operator of the bus. He testified that, as he approached the bus stop in question, he saw the plaintiff coming rapidly through a side street toward the stop; that by the time he reached the stop she was in the middle of the street; that when she was on the platform of the bus he noticed that "she was flustered; her face was red." What he said happened to the plaintiff

after she presented her fare to him is best told in his own words. "I saw her thrown out. She evidently lost her balance. She did lose her balance, to be definite. She threw out both arms and toppled into the street. I made a grab to catch her but I was unsuccessful." He denied that the bus moved from the time that the plaintiff started to board it until after the accident had happened, but he admitted that the bus could be started with the doors of the platform open, although it was against the rules of the defendant company to do this.

Three other witnesses who were passengers on the bus testified for the defendant. The substance of the testimony of two of these witnesses, as to any movement of the bus while the plaintiff was on the platform, is that they did "not notice" any such movement. The third witness, Mary Marcello, did testify that there was "no jerk forward or backward."

On the question of damages the following facts appear in evidence. The plaintiff was admitted to the Rhode Island hospital in a semi-conscious condition suffering from a scalp wound, a fracture at the back of her skull at the occipital bone, severe brain concussion and some minor injuries. She testified that she remained in the hospital for about seven weeks, after which she stayed with a friend for a little over four weeks, and at the end of this time she was able to go down town; that thereafter she visited another friend in Taunton, where she remained about two weeks, and then went to her lodging place, where she has since lived, doing light housekeeping.

The plaintiff testified further that after the accident she suffered from sick and dizzy spells; that these symptoms have practically disappeared except for an occasional dizzy feeling when she moves quickly or suddenly; that her back aches if she stands too long; that since the accident she has had trouble with the hearing in her left ear; that "part of it has returned but not all" and that she lacks the endurance

that she used to have. The plaintiff admitted that the hearing in her right ear has been impaired since she was a young woman. She also gave evidence that in the latter part of December 1936, while traveling in a train alone on her way back from a visit to a relative in Schenectady, New York, she was thrown across the ladies' room against some steam pipes by the lurching of the train, suffering a fractured rib.

The plaintiff further testified that she had been unable to work since the accident because of her condition; that her wages were $23.70 a week and that her only monetary outlay following the accident was a hospital bill of $149, no charge having been made against her by the doctor who treated her and was still treating her, although it appeared in evidence that, if he ultimately decided to charge her for his services relating to the accident involved herein, such charge would be about $200. During the presentation of her case the plaintiff put in evidence life tables which gave her an expectancy of life between 5.10 to 6.12 years, but she did not show the present value of a dollar according to these tables.

The plaintiff's doctor, after describing her injuries substantially as above indicated, testified that the plaintiff's loss of memory of what had happened shortly before the accident was consistent with her injuries; that he had treated her for the injuries she had sustained on the train while returning from New York; that at that time he found her suffering from a fractured rib and a severe shaking up and hemorrhage; and that he has since treated her for arthritis of both knees, which was not connected with the accident involved in the present case. The witness expressed the opinion that, as a result of the plaintiff's injuries suffered by reason of the accident now in question, "there will be some permanent damage to the hearing and to the sense of balance." As to the plaintiff's ability to work, the doctor testified that, from his contact with the Charles V. Chapin hospital, where the plaintiff had been employed, he knew in a general way the nature of her work, and that he did not

think that she would ever be able to do that work again, although he admitted that at her age a person's "ability to work decreases in general." There is no evidence in the case, however, that the plaintiff ever returned to the Charles V. Chapin hospital to ask for employment of any kind in line with what she formerly had done, or that she had tried to get work elsewhere after the accident.

Under its tenth exception the defendant contends that the trial justice erred in refusing to direct a verdict for the defendant, arguing that the plaintiff had reached a place of safety on the bus; that the evidence showed no unusual jerk or movement of the bus after she had boarded it; that the motion of the bus as described by the witnesses could not possibly have caused her to fall in the manner described; and that, due to the heat, the plaintiff's age, tired condition, and over-exertion in hurrying for the bus, the only inference that could reasonably be drawn, because of the conditions mentioned, was that the plaintiff had fainted or lost control of her faculties after boarding the bus, and had fallen over backward into the street.

On a motion for a directed verdict neither the credibility of the witnesses nor the weight of the evidence is open to consideration by the trial justice. The evidence in this case as to how the accident happened is conflicting, and under such circumstances the plaintiff, under our well-settled rule on a motion for a directed verdict, is entitled to the benefit of every reasonable inference in her favor which may be drawn from the evidence. In arguing as it does, the defendant fails to consider important circumstances appearing in the plaintiff's evidence such as the sudden stopping or jerking of the bus while the doors were open and while the plaintiff was standing on the platform near that opening, which circumstances, if believed, and if her age is kept in mind, might reasonably lead to a different conclusion from the one contended for by the defendant. On the issue of liability, therefore, the evidence clearly presented a question of fact

for the determination of the jury, and the refusal of the trial justice to direct a verdict for the defendant was not error. This exception is overruled.

No exception having been taken to the charge, except as to the question of damages, it remains as the law of the case, and there is nothing in the record before us showing that the jury failed to follow the instructions as given. The defendant contends that the jury should have returned a verdict in its favor in view of certain instructions. But this is only so in case they determined the issues of fact in the defendant's favor. Apparently they decided those issues for the plaintiff, and the evidence reasonably supports their finding in that connection.

On the question of whether the verdict is supported by the weight of the evidence, we cannot say that the trial justice was clearly wrong in denying the defendant's motion for a new trial, in so far as such ruling concerns the issue of liability. He had the opportunity of hearing and seeing the witnesses as they testified, which advantage we do not have. For these reasons we will not disturb his approval of the jury's verdict relating to that issue. We find to be without merit, therefore, defendant's exceptions numbered twelve, thirteen, fifteen and sixteen, to the denial of its motion for a new trial, in so far as they relate to the question of defendant's liability.

The matter of damages presents a more difficult problem. The rescript of the trial justice, filed when he passed upon the defendant's motion for a new trial, contains the following language with reference to the appearance of the plaintiff when she was a witness before him. "Physically and mentally she appeared to be well and alert, outwardly showing no remaining effects of the accident beyond a certain deafness which her testimony indicated resulted from it." Further it is undisputed that the defendant is in no way responsible for the injuries suffered by the plaintiff on the train in December 1936, as hereinbefore mentioned, or for

the arthritis for which she is now being treated. Her physician testified as follows concerning the plaintiff's pain and suffering: "As I recollect it there was not much pain", and then testified there was dizziness and nausea for about six weeks after the accident.

It is clear from the evidence that the plaintiff substantially recovered from the effects of the accident involved in this case within a reasonable time thereafter, excepting possibly as to some weakness or lack of endurance, and as to some deafness in her left ear. As to the lessening of her endurance, the age of the plaintiff and the natural results following therefrom must be kept in mind. As to the deafness in her left ear, there was evidence that this condition was improving, although there was also evidence that probably there was some permanent injury in this connection. The plaintiff's hearing in her right ear had been affected for many years. The evidence discloses that the plaintiff had so far recovered her normal health in December 1936, that she felt able to make a train trip to Schenectady and return, unaccompanied. Long before that time she was apparently performing her usual and ordinary household duties.

In regard to her work at the Charles V. Chapin hospital, there is evidence from her doctor that he did not "think" she would be able to perform that work in the future, because of her condition growing out of the accident in question. However, it also appears from the evidence that the plaintiff has never applied to that hospital to ascertain if she could get back her position there, or that she attempted at any time to obtain work of any kind elsewhere. In connection with the matter of employment the plaintiff's age should not be overlooked. There is no evidence whatever tending to show how long she would have continued to be employed at the Charles V. Chapin hospital, if she had not been injured.

In view of this state of the record, we are of the opinion that the amount of damages awarded by the jury in its ver-

dict is grossly excessive, and that the trial justice was clearly wrong in refusing to grant the defendant's motion for a new trial based on that ground. We find, therefore, that the defendant's fourteenth and fifteenth exceptions, in so far as they relate to such ground, must be sustained.

The plaintiff, however, is entitled to be given an opportunity to remit so much of the verdict as we deem excessive, before the defendant is granted a new trial unconditionally. According to the evidence the plaintiff's actual monetary outlay would not in any event exceed $349. An allowance of a year's loss of wages by reason of the accident in question, or approximately $1200, in our judgment, under all the facts and circumstances appearing in evidence, will amply compensate the plaintiff for the loss caused her in that respect by the accident involved herein. Any finding of loss of wages beyond such time, for which the defendant is responsible, in our judgment is unsupported by satisfactory evidence, and becomes, on the present record, a matter of conjecture and speculation. Finally, having in mind the nature of the plaintiff's injuries, the effects thereof upon her and the element of pain and suffering, we conclude that, from all the evidence herein, the plaintiff will be fully compensated for the injuries and losses caused her by the accident in question by an award of damages of $2500.

The defendant's eleventh exception is to that portion of the charge of the trial justice dealing with the allowance to the plaintiff for loss of future wages. The charge on this point was brief, and somewhat indefinite and inadequate. The trial justice charged the jury that in determining the plaintiff's damages, if they found the defendant liable, she was entitled to recover "the loss of wages that she has sustained for such time as you may believe she has sustained them and may sustain them . . . ." The attention of the jury was not specifically directed to the evidence appearing on that issue, or to the fact that the defendant was not to be held liable for loss of wages, resulting to the plaintiff from

causes independent of the accident in question, such as the injuries sustained by her on the train in December 1936, and the arthritis hereinbefore referred to. However, while not entirely satisfactory, we do not find that the portion of the charge in question was so prejudicial as to require us to grant the defendant a new trial. At most, the part of the charge excepted to by the defendant dealt with only one element of the plaintiff's damages. In heretofore passing upon the defendant's fourteenth and fifteenth exceptions we have, by ordering a remittitur, been able substantially to dispose of the issue raised by the defendant's exception to the part of the charge in question, in so far as any prejudicial effect therefrom upon the defendant is concerned. The defendant's eleventh exception is, therefore, overruled.

The defendant has three exceptions relating to the exclusion and admission of testimony during the trial. The seventh and eighth exceptions cover, in general, the same matter. The defendant clearly takes nothing by its seventh exception. The eighth exception concerns evidence in the form of a written report, offered by the defendant as coming within the provisions of public laws 1928, chapter 1161. Assuming, without deciding, that the report in question was admissible under the terms of said statute, we find that its exclusion was harmless error. The fact, to help establish which the report was being offered by the defendant, was already in evidence in the case, and was before the jury for their consideration. The defendant's ninth exception has been examined and found to be without merit. These three exceptions are, therefore, overruled.

The defendant's fourteenth and fifteenth exceptions are sustained. Its other exceptions are overruled and the case is remitted to the superior court for a new trial, unless the plaintiff, on or before August 10, 1938, shall file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $2500. In case the plaintiff shall file such remittitur, the superior court is directed to enter judg-

ment for the plaintiff on the verdict as reduced by the remittitur.

*Hinckley, Allen, Tillinghast & Wheeler, Roger T. Clapp, S. Everett Wilkins, Jr.,* for plaintiff.

*Clifford Whipple, Earl A. Sweeney,* for defendant.